**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PROSPECT EQUITIES FRANCHISE CORPORATION, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>PROSPECT EQUITIES PREMIER INC. now known as ILLINOIS PREMIER HOMES INC., an Illinois corporation, and COREY SCOTT,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff PROSPECT EQUITIES FRANCHISE CORPORATION (hereinafter "PEFC" or "Plaintiff"), by and through its attorneys, REIN F. KRAMMER and JAMES G. GILLINGHAM, of MASUDA, FUNAI, EIFERT & MITCHELL, LTD., for its Complaint, states as follows:

## THE NATURE OF THE ACTION

1.       This is an action against PROSPECT EQUITIES PREMIER INC. now known as ILLINOIS PREMIER HOMES INC. (hereinafter "Premier Equities") and COREY SCOTT (hereinafter "Scott"), premised on violations of the franchise agreements between PEFC and Scott. As a result of Scott's numerous violations of the franchise agreements, PEFC terminated the agreements effective August 15, 2014. However, notwithstanding the termination of the franchise agreements, Defendants, in violation of the Lanham Act, continue to improperly use PEFC's intellectual property. Defendants' use of PEFC's intellectual property, notwithstanding the termination of the franchise agreements, further constitutes unfair competition under Illinois law. Moreover, Scott has refused to comply with his post-termination obligations under the franchise

1

agreements, including his obligation not to compete with PEFC. Additionally, Scott has defaulted on two asset sale agreements and associated financing documents, pursuant to which Scott purchased from Prospect Equities, Inc. (hereinafter "Prospect Equities") the assets necessary to commence operating his Prospect Equities franchises in the first instance. PEFC seeks, among other things, damages, and preliminary and permanent injunctive relief enjoining Defendants from competing with PEFC and enjoining Defendants' wrongful use of PEFC's federally registered trademarks, damages for Defendants' wrongful conduct, and the attorneys' fees and costs PEFC has incurred and will incur in prosecuting this action.

## THE PARTIES

2.      PEFC is an Illinois corporation with its principal place of business located at 500 N. Michigan Avenue, Suite 1802, Chicago, Illinois 60611.

3.      Premier Equities is an Illinois corporation with its principal place of business located at Two Trans Am Plaza Drive, Suite 2900, Oak Brook Terrace, Illinois 60181.

4.      Scott, is an individual and resident of the state of Illinois, who resides at 22324 Palo Alto Dr., Richton Park, Illinois 60471.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this case arises under the Lanham Trademark Act, 15 U.S.C. §§ 1051, *et seq*. (hereinafter the "Lanham Act"). Jurisdiction is also proper pursuant to 28 U.S.C. §§ 1338(a) and (b).

6.      This Court has supplemental jurisdiction over the remaining claims in this Complaint that arise under the common and statutory laws of the State of Illinois, pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form

2

part of the same case or controversy and derive from a common nucleus of operative facts, and the general supplemental jurisdiction of this Court.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred within this District.

## BACKGROUND

8. Prospect Equities is an industry leader in real estate and business brokerage and property management. Founded in 2000, Prospect Equities offers brokerage and consulting services in residential and commercial real estate, apartment rentals, business brokerage, and builder/developer representation.

9. PEFC possesses the right to license Prospect Equities franchises, including the right to license a system or business program, including expertise for conducting or operating a business under the mark Prospect Equities.

10. Based upon years of experience, Prospect Equities has developed and is the sole and exclusive owner of, unique, distinctive, and comprehensive systems relating to the establishment and operation of businesses offering full service residential and commercial real estate brokerage services (hereinafter the "Prospect Equities System").

11. The Prospect Equities System is a uniform system for the establishment of a residential and commercial real estate brokerage business offering a complete solution for clients that need to sell, lease, or exchange property. The Prospect Equities System is designed to ensure that Prospect Equities franchisees and the services offered by them meet uniform, high quality standards.

12. The Prospect Equities System is also designed to protect Prospect Equities' name and reputation.

13.     The Prospect Equities System is known and favorably recognized by consumers. Consumers choose Prospect Equities because of its high reputation for quality and service.

### The Prospect Equities Mark

14.     To identify the source, origin and sponsorship of Prospect Equities franchises and the services they offer, and to distinguish Prospect Equities franchises  and the services provided thereby from other real estate brokerage services, Prospect Equities has established a federally registered trademark.

15.     On August 21, 2007, Prospect Equities registered the Prospect Equities mark (hereinafter the "Mark") with the United States Patent and Trademark Office (USPTO Serial No. 77035242; USPTO Reg. No. 3281869).

16.     On February 3, 2010, Prospect Equities assigned the Mark to PEFC, who is currently the exclusive owner of the Mark.

17.     The Mark is registered on the Principal Register of the United States Patent and Trademark Office.  The registration continues in full force and effect and is incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

18.     Prospect Equities and PEFC have continuously used the Mark in interstate commerce in connection with and the promotion of the Prospect Equities businesses and services they offer.

19.     Prospect Equities, PEFC and its authorized franchises have extensively advertised and promoted their businesses and the services they offer under the Mark.  As a result of such efforts and the services under the Mark, the Mark has met with widespread public approval and has established demand and goodwill among consumers.

### The Written Franchise Agreements

20.     On May 29, 2012, Scott and PEFC entered into a written franchise agreement, pursuant to which PEFC granted Scott, for an initial five (5) year term, a franchise to operate a Prospect Equities® franchise in DuPage County, Illinois and within the zip code 60181 (hereinafter the "Oak Brook Franchise Agreement"), and licensed Scott to use the Mark in operating the franchise. [A true copy of the Oak Brook Franchise Agreement is attached hereto as Exhibit "A".]

21.     On June 27, 2012, Scott and PEFC entered into a written franchise agreement, pursuant to which PEFC granted Scott, for an initial five (5) year term, a franchise to operate a Prospect Equities® franchise in DuPage County, Illinois and within the zip code 60532 (hereinafter the "Lisle Franchise Agreement" and together with the Oak Brook Franchise Agreement, the "Franchise Agreements"), and licensed Scott to use the Mark in operating the franchise.  [A true copy of the Lisle Franchise Agreement is attached hereto as Exhibit "B".][1]

22.     The Franchise Agreements grant a non-exclusive right to use the Mark in accordance with the terms of the Franchise Agreements and PEFC's standards and specifications, some of which are set forth in the PEFC Operations Manual and various policy statements that may be issued from time to time by PEFC.

23.      In exchange for the license and other services (such as training, supervision, assistance, provision of a webpage, recruiting qualifications, and comprehensive hiring guidelines), PEFC is entitled under the Franchise Agreements to receive the payment of fees including, but not limited to, a franchise fee, royalty fees, commissions, and advertising fees.

---

[1] Other than the provisions relating to territory, the Oak Brook Franchise Agreement is identical to the Lisle Franchise Agreement.  For this reason, references will be generically made to the "Franchise Agreements".

24.     Scott agreed to operate the franchises in compliance with the Franchise Agreements and with all laws and in conformance with PEFC's standards and specifications.

25.     Subsequent to entering the Franchise Agreements, Scott opened and operated two different locations under the Franchise Agreements. The first location was in Oak Brook, Illinois. The second location was in Lisle, Illinois.

## Scott Agrees to Purchase Certain Assets From Prospect Equities

26.     Shortly after the execution of the Franchise Agreements, Scott agreed to purchase a number of assets from Prospect Equities in order to begin operating franchises pursuant to the Franchise Agreements.

27.     On June 1, 2012, Scott agreed to purchase assets from Prospect Equities including a lease for office space located in Oak Brook, Illinois.

28.     Shortly thereafter, on August 1, 2012, Scott agreed to purchase assets from Prospect Equities including, but no limited to, a lease for office space located in Lisle, Illinois.

29.     The most significant asset purchased by Scott pursuant to these agreements was the realtors who had been working at the locations on a long-term basis and up to that point, had been sponsored by Prospect Equities. At the time of the purchase the Oak Brook location had been operating for 6 years and Lisle had been operating for 8 years. The sponsored realtors purchased by Scott constituted the majority of those businesses' cash flow.

30.     Scott purchased the assets in order to commence operating two franchise locations, the Lisle and Oak Brook locations, pursuant to the Franchise Agreements.

31.     The majority of these asset purchases were financed pursuant to zero percent interest loans with Prospect Equities.

32.     Notwithstanding the fact that the notes did not charge interest, Scott failed to make the payments required thereunder.

33.     Accordingly, Scott breached the asset sale agreements, the associated notes, security agreements, and personal guarantees.

### PEFC Terminates The Franchise Agreements Due to Scott's Noncompliance

34.     Notwithstanding Scott's agreement to adhere to the terms and conditions set forth in the Franchise Agreements, he failed to comply with a number of aspects of said Franchise Agreements.

35.     Section XXIII.C.6 of the Franchise Agreements provides that PEFC may terminate the Franchise Agreements upon Scott's failure to submit financial statements, tax returns and other required reports.

36.     Scott violated Section XXIII.C.6 of the Franchise Agreements by failing to provide PEFC Scott's 2012 and 2013 tax returns, his 2013 operating account records, as well as his July and August reports for 2014, for both the Lisle and Oak Brook locations.

37.     Section XXII.R of the Franchise Agreements also requires the franchisee to provide PEFC access to its franchise locations.

38.     Scott violated this provision by failing to allow PEFC to access either the Lisle or the Oak Brook locations.

39.     Section XXIII.C.9 of the Franchise Agreements provides that PEFC may terminate the Franchise Agreements if Scott, his shareholders, managing partners or office manager, or any other person affiliated with the business materially violates any laws applicable to real estate brokerage and related activities.

40. Section XXIII.C.7 provides that PEFC may terminate the Franchise Agreements if Scott fails to hire licensed associates and use an independent contractor agreement with each associate affiliated with the business.

41. Scott violated Sections XXIII.C.7 and XXIII.C.9 of the Franchise Agreements by paying commissions for the sale or lease of real estate to individuals who were not licensed real estate brokers licensed by the State of Illinois.

42. Scott also violated the Franchise Agreements by abandoning the Lisle location, transferring agents from the Lisle location to the Oak Brook location without notice to PEFC, and not paying the required transfer fee.

43. Due to the foregoing breaches of the Franchise Agreements, on July 14, 2014, PEFC notified Scott, through his attorney, of Scott's obligations under the Franchise Agreements (hereinafter the "Notice of Default"). [A copy of the Notice of Default is attached hereto as Exhibit "C".]

44. The Notice of Default advised Scott that if he did not cure his defaults within thirty (30) days as required by the Franchise Agreements, on or before August 15, 2014, the Franchise Agreements would be terminated.

45. As of August 15, 2014, the defaults set forth in the Notice of Default and the cure period, as specified in the Notice of Default, had expired. Accordingly, the Franchise Agreements terminated.

46. The Notice of Default advised Scott that he was required to comply with his post-termination obligations under the Franchise Agreements including, but not limited to, his obligation to make payments of all fees due to PEFC and his non-competition obligations under the Franchise Agreements.

8

**Notwithstanding The Franchise Agreements' Post-Termination Obligations, Defendants Are Competing With PEFC and Using the Mark After Termination**

47.     Rather than cure the defaults under the Franchise Agreements, Scott decided to rename the business, and then directly compete with PEFC and its authorized franchises.

48.     On August 14, 2014, Scott sent a memorandum to all Prospect Equities agents regarding "Illinois Premier Homes, Inc." and confirming his improper use of the Mark. [A copy of the August 14, 2014 Letter is attached hereto as Exhibit "D".]

49.     In the letter, Scott indicates that he is changing the name of the company from Prospect Equities Premier Inc. to Illinois Premier Homes, Inc.

50.     In the cover email, Scott indicates that the company will still operate out of the same location as Premier Equities had been operating when it was a PEFC franchisee. [A copy of the cover email is attached hereto as Exhibit "E".]

51.     In the email, Scott indicates that "the same staff will be ready [sic] able and willing to assist you with all your real estate needs."

52.     In the email, Scott also indicates that Premier Equities would be continuing to provide the "same great services and tools" that it had been providing for the preceding three years as a PEFC franchisee.

53.     Taken together, the cover letter and August 14, 2014 memorandum confirm that subsequent to the termination of the Franchise Agreement Scott and Premier Equities will directly compete with PEFC and Prospect Equities.

54.     Defendants' competition with the PEFC is further apparent from the fact that, as of the date of filing, eleven (11) Prospect Equities agents, which represents approximately 15% of the total number of Prospect Equities agents in the Chicagoland area, have transferred their affiliation to Premier Equities.

55.     On Tuesday, August 19, 2014, PEFC sent a letter to Scott demanding mediation. pursuant to the Franchise Agreements.  Scott never responded to PEFC's demand for mediation. [A true and correct copy of the mediation demand letter is attached hereto as Exhibit "F".]

## COUNT I
## CLAIM VS. COREY SCOTT ON THE JUNE NOTE

56.     PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 56, inclusive.

57.     On or about June 1, 2012, Scott and Prospect Equities entered into an asset sale agreement (hereinafter the "June Asset Sale Agreement"), security agreement (hereinafter the "June Security Agreement") and note (hereinafter the "June Note"), in conjunction with the purchase, by Scott, of certain assets of Prospect Equities.  [A copy of the June Asset Sale Agreement is attached hereto as Exhibit "G".  A copy of the June Security Agreement is attached hereto as Exhibit "H".  A copy of the June Note is attached hereto as Exhibit "I".]

58.     On June 3, 2012, Prospect Equities assigned all rights, title and interest held by it in the June Sale Agreement to PEFC. [A copy of the June Assignment is attached hereto as Exhibit "J".]

59.     Pursuant to the June Asset Sale Agreement, Scott would purchase certain assets from Prospect Equities as identified in the June Asset Sale Agreement (the "June Purchased Assets").  The June Purchased Assets included, without limitation, equipment located at the Premises (as defined in the June Asset Sale Agreement), Prospect Equities' lease for the Premises, employment agreements for the employees who work at the premises, tangible physical property, maintenance records, supplier/vendor/contractor agreements and contact information, books, and software licenses.

60.     In exchange for the June Purchased Assets, Scott agreed to pay Prospect Equities Four Hundred Thousand Dollars ($400,000.00).

61.     The June Asset Sale Agreement required Scott to make an initial payment of twenty thousand dollars ($20,000.00).

62.     The remaining three hundred eighty thousand dollars ($380,000.00), was to be paid pursuant to the June Note.

63.     Pursuant to the June Note, Scott agreed to make ninety five (95) monthly payments of four thousand dollars ($4,000.00) each to Prospect Equities, commencing on September 1, 2012.

64.     Scott's obligations under the June Note were secured by all of the assets transferred to Scott pursuant to the June Asset Sale Agreement, as well as any assets that Scott acquired after the Date of Settlement, including, but not limited to accounts receivable and expected commissions.

65.     Scott has failed to tender to Prospect Equities certain of the required monthly payments under the June Note.  Demand has been made by PEFC for the full payment of the delinquent balance.

66.     PEFC has complied with all of its obligations under the June Note.

67.     Section 4 of the June Note provides that non-payment of principal constitutes an event of default.  As a result thereof, Scott's failure to make payments required by the June Note constitutes a default under the June Note.

68.     Section 1.I of the June Note provides that upon default, Prospect Equities shall have the right to reenter and repossess the Oak Brook Premises, as defined in the June Note.

69.     Section 2 of the June Note provides that Scott shall pay additional late charges in the amount of 7% of the amount then due, if any payment under the June Note is not paid within 5 days of the first business day of the month.

70. Paragraph 6 of the June Note allows Prospect Equities to recover from Scott its costs and expenses, including reasonable attorneys' fees, incurred in connection with enforcement or collection of the June Note.

71. As a result of the default by Scott, there is due and owing, as of July 14, 2014, from Scott to Prospect Equities the sum of $289,235.76, plus attorneys' fees, interest, and costs as provided by the June Note.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

A. For judgment against Defendant Scott, as of July 14, 2014 in an amount in excess of $289,235.76, plus expenses, costs, attorneys' fees, and interest as provided in the June Note; and

B. For such other and further relief as this Court may deem equitable and just.

## COUNT II
## CLAIM VS. COREY SCOTT ON THE JUNE SECURITY AGREEMENT

72. PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 72 inclusive.

73. Pursuant to Section 2 of the June Security Agreement, Scott granted a security interest in the June Purchased Assets and all of Scott's accounts receivable to Prospect Equities.

74. Pursuant to Section 7 of the June Security Agreement, Scott shall be in default of the June Security Agreement if, among other things, he is in default under the June Note, June Asset Sale Agreement, or the Franchise Agreements.

75. As set forth herein, Scott has failed to make payments to Prospect Equities pursuant to the June Note and has breached the Franchise Agreements and is, therefore, in default under the June Security Agreement.

76.     PEFC has complied with all of its obligations under the June Security Agreement.

77.     Pursuant to Section 8 of the June Security Agreement, in the event of default by Scott, Prospect Equities may, among other things, declare the entire unpaid balance of the secured indebtedness immediately due and payable.

78.     Section 9.f of the June Security Agreement allows Prospect Equities to recover from Scott its attorneys' fees, costs and expenses incurred in this matter.

79.     As a result of the default by Scott, there is now due and owing as of July 14, 2014 the sum of $289,235.76, plus attorneys' fees and costs as provided in the June Security Agreement.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

A.     For judgment against Defendant Scott, as of July 14, 2014 in an amount in excess of $289,235.76, plus expenses, costs, attorneys' fees, and interest as provided in the June Security Agreement; and

B.     For such other and further relief as this Court may deem equitable and just.

## COUNT III
## CLAIM VS. COREY SCOTT ON THE JUNE GUARANTY

80.     PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 80 inclusive.

81.     On or about June 1, 2012, in connection with the June Note, Scott agreed to personally guaranty the full and prompt performance of all obligations that he had under the June Note (hereinafter the "June Guaranty").

82.     As set forth above, Scott has failed to perform all of his obligations under the June Note, including, but not limited to Scott's obligation to make timely payments thereunder.

83.     PEFC has complied with all of its obligations under the June Guaranty.

84.     As a result thereof, there is due and owing from Scott to Prospect Equities, pursuant to the June Guaranty of the June Note, a sum, as of July 14, 2014, of $289,235.76, plus attorneys' fees, interest and costs as provided by the June Note.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

A.     For judgment against Defendant Scott, as of July 14, 2014 in an amount in excess of $289,235.76, plus expenses, costs, attorneys' fees, and interest as provided in the June Note; and

B.     For such other and further relief as this Court may deem equitable and just.

## COUNT IV
## CLAIM VS. COREY SCOTT ON THE AUGUST NOTE

85.     PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 85, inclusive.

86.     On or about August 1, 2012, Scott and Prospect Equities entered into an asset sale agreement (hereinafter the "August Asset Sale Agreement"), security agreement (hereinafter the "August Security Agreement") and note (hereinafter the "August Note"), in conjunction with the purchase, by Scott, of certain assets of Prospect Equities.  [A copy of the August Asset Sale Agreement is attached hereto as Exhibit "K".  A copy of the August Security Agreement is attached hereto as Exhibit "L".  A copy of the August Note is attached hereto as Exhibit "M".]

87.     On August 4, 2012, Prospect Equities assigned all rights, title and interests held by it in the August Sale Agreement to PEFC. [A copy of the August assignment is attached hereto as Exhibit "N".]

88.     Pursuant to the August Asset Sale Agreement, Scott would purchase certain assets from Prospect Equities as identified in the August Asset Sale Agreement (the "August Purchased

14

Assets"). The August Purchased Assets included, without limitation, equipment located at the Premises (as defined in the August Asset Sale Agreement? If the premises, is different from the earlier one, which I believe it is, it needs to be defined differently), Prospect Equities' lease for the Premises, employment agreements for the employees who work at the premises, tangible physical property, maintenance records, supplier/vendor/contractor agreements and contact information, books, and software licenses.

89. In exchange for the Purchased Assets, Scott agreed to pay Prospect Equities one hundred ninety thousand dollars ($190,000.00).

90. The August Asset Sale Agreement required Scott to make an initial payment of ten thousand dollars ($10,000.00).

91. The August Asset Sale Agreement required Scott to make an additional six thousand ($6,000.00) payment thirty days after the date of signing.

92. The remaining one hundred seventy four thousand dollars ($174,000.00), was to be paid pursuant to the August Note.

93. Pursuant to the August Note, Scott agreed to make eighty seven (87) monthly payments of two thousand dollars ($2,000.00) each to Prospect Equities, commencing on October 1, 2012.

94. Scott's obligations under the August Note were secured by all of the assets transferred to Scott pursuant to the August Asset Sale Agreement, as well as after acquired personal property, inventory, and accounts receivable by Scott after the date of the August Asset Sale Agreement.

95.     Scott has failed to tender to Prospect Equities certain of the required monthly payments under the August Note.  Demand has been made by PEFC for the full payment of the delinquent balance.

96.     PEFC has complied with all of its obligations under the August Note.

97.     Section 4 of the August Note provides that non-payment of principal constitutes an event of default.  As a result thereof, Scott's failure to make payments required by the August Note constitutes a default under the August Note.

98.     Section 1.I of the August Note provides that upon default, Prospect Equities shall have the right to reenter and repossess the Lisle Premises.

99.     Section 2 of the August Note provides that Scott shall pay additional late charges in the amount of 7% of the amount then due, if any payment under the June Note is not paid within 5 days of the first business day of the month.

100.     Paragraph 6 of the August Note allows Prospect Equities to recover from Scott its costs and expenses, including reasonable attorneys' fees, incurred in connection with enforcement or collection of the August Note.

101.     As a result of the default by Scott, there is due and owing, as of July 14, 2014, from Scott to Prospect Equities the sum of $130,642.78, plus attorneys' fees, interest, and costs as provided by the August Note.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

A.     For judgment against Defendant Scott, as of July 14, 2014 in an amount in excess of $130,642.78, plus expenses, costs, attorneys' fees, and interest as provided in the August Note; and

B.  For such other and further relief as this Court may deem equitable and just.

## COUNT V
## CLAIM VS. COREY SCOTT ON THE AUGUST SECURITY AGREEMENT

102.    PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 102 inclusive.

103.    Pursuant to Section 2 of the August Security Agreement, Scott granted a security interest in the August Purchased Assets and all of Scott's accounts receivable to Prospect Equities.

104.    Pursuant to Section 7 of the August Security Agreement, Scott shall be in default of the June Security Agreement if, among other things, he is in default under the August Note, August Asset Sale Agreement, or the Franchise Agreement.

105.    As set forth herein, Scott has failed to make payments to Prospect Equities pursuant to the August Note and has breached the Franchise Agreements and is, therefore, in default under the August Security Agreement.

106.    PEFC has complied with all obligations under the August Security Agreement.

107.    Pursuant to Section 8 of the August Security Agreement, in the event of default by Scott, Prospect Equities may, among other things, declare the entire unpaid balance of the secured indebtedness immediately due and payable.

108.    Section 9.f of the August Security Agreement allows Prospect Equities to recover from Scott its attorneys' fees, costs and expenses incurred in this matter.

109.    As a result of the default by Scott, there is now due and owing as of July 14, 2014 the sum of $130,642.78, plus attorneys' fees and costs as provided in the August Security Agreement.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

17

A.    For judgment against Defendant Scott, as of July 14, 2014 in an amount in excess of $130,642.78, plus expenses, costs, attorneys' fees, and interest as provided in the August Security Agreement; and

B.    For such other and further relief as this Court may deem equitable and just.

## COUNT VI
## CLAIM VS. COREY SCOTT ON THE AUGUST GUARANTY

110.    PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 110 inclusive.

111.    On or about August 1, 2012, in connection with the August Note, Scott agreed to personally guaranty the full and prompt performance of all obligations that he had under the August Note (hereinafter the "August Guaranty").

112.    As set forth above, Scott has failed to perform all of his obligations under the August Note, including, but not limited to Scott's obligation to make timely payments thereunder.

113.    PEFC has complied with all of its obligations under the August Note.

114.    As a result thereof, there is due and owing from Scott to PEFC, pursuant to the August Guaranty  of the August Note, a sum, as of July 14, 2014, of $130,642.78, plus attorneys' fees, interest and costs as provided by the August Note.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

A.    For judgment against Defendant Scott, as of July 14, 2014 in an amount in excess of $130,642.78 plus expenses, costs, attorneys' fees, and interest as provided in the August Note; and

B.    For such other and further relief as this Court may deem equitable and just.

18

## COUNT VII
## INJUNCTIVE RELIEF UNDER THE JUNE AND AUGUST PURCHASED ASSETS

115.     PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 115 inclusive.

116.     The June Purchased Assets, August Purchased Assets, and Scott's accounts receivable (hereinafter collectively the "Collateral") are subject to continuing depreciation, deterioration and depletion, thus rendering them less marketable, less valuable, and thereby impairing the value of PEFC's interest in the Collateral.

117.     Scott failed to meet his debts in the ordinary course of business by failing to pay PEFC the amounts due under the June Asset Sale Agreement and the August Asset Sale Agreement.

118.     The continued possession and retention, as well as the depreciation in value of the Collateral, without payment from Scott to PEFC is thus causing irreparable and continuing injury to PEFC for which PEFC has no adequate remedy at law.

119.     Section 9 of the June Security Agreement and August Security Agreement provides that, upon Scott's default, PEFC can, among other things:

  a.   collect all of the Collateral in Scott's name and take control of any cash or non-cash proceeds of the Collateral;

  b.   exercise all rights of a secured creditor under the Uniform Commercial Code; and

  c.   renter the Premises (as that term is defined in the June Asset Sale Agreement and August Asset Sale Agreement).

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORP. prays for temporary, preliminary, and permanent injunctions against Defendants as follows:

A.     For temporary, preliminary and permanent injunctive relief immediately restraining and enjoining Defendants and their agents, landlords, attorneys, servants, employees and others

acting in their stead or in concert with them from further: (a) using, moving, removing, secreting, distributing, selling, concealing, dealing in, dissipating, depleting, depreciating, damaging, impairing, diminishing in value, destroying, harming, encumbering, transferring, conveying, disposing of or otherwise reducing the value of, the Collateral or any of the goods subject to or covered by the June Security Agreement and the August Security Agreement; (b) receiving, collecting, assigning, other than by order of this Court, disbursing, spending, paying other creditors with, losing, commingling, expanding, depleting, discounting, negating, extending, novating, diverting or otherwise in any manner dealing with the proceeds of or other distribution or other disposition of the Collateral; (c) committing waste in connection with the Collateral; (d) interfering with PEFC's rights and duties under any order entered by this Court; and (e) cancelling, modifying or terminating any existing insurance policies on or related to the Collateral;

B.      For permanent injunctive relief immediately restraining and enjoining Defendants and their agents, landlords, attorneys, servants, employees, and others acting their stead or in concert with them, from prohibiting or interfering with PEFC's entry into their premises and PEFC's repossessing and taking control of the Collateral;

C.      For an order directing Defendants and their agents, landlords, attorneys, servants, employees and others acting in their stead (a) to immediately make the Collateral available for possession by PEFC; and (b) promptly deliver possession and control of the Collateral and insurance policies to PEFC;

D.      For an order of immediate possession, with full title and control, of the Collateral to be assigned to PEFC;

E.     For permanent injunctive relief immediately restraining all third parties who may affect the use, operation, access, possession and/or control of and to the Collateral from PEFC's taking possession of, access to, removal or, dismantling of, or use of the Collateral; and

F.     For any other relief this Court deems just and proper.

## COUNT VIII
## CLAIM VS PREMIER EQUITIES ON THE FRANCHISE AGREEMENTS

120.   PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 120 inclusive.

121.   As set forth above, as a result of Scott's defaults under the Franchise Agreements and failure to timely cure those defaults, the Franchise Agreements terminated on August 15, 2014.

122.   Section XXIV.H of the Franchise Agreements provides that within fifteen (15) days after the effective date of termination of the Franchise Agreements, Scott is required to pay all royalty fees, national advertising contributions, other advertising fees, payments for inventory, office equipment or supplies, or other sums owed to PEFC by Scott, which remain unpaid.

123.   Section XXIV.H also provides that Premier Equities shall pay to PEFC all monthly royalties that Premier Equities would have otherwise paid to PEFC had the Franchise Agreements remained in effect until April 2016.  In this regard, the Franchise Agreements provide as follows:

The following method of calculation represents a fair and reasonable estimate of foreseeable lost revenue as the Franchisee must pay to the Franchisor all Royalty Fee payments that the Franchisor would have received, if this Agreement remained in effect until its scheduled expiration date.  This payment shall be calculated based on the average monthly royalty payments owed to the Franchisor based on: the number of Associates that Franchisee reported for the previous twelve (12) months for new Associates and Associate monthly dues; number of residential real estate transactions closed and rented for the previous twelve (12) months; the average Gross Commissions reported for the previous twelve (12) months; and the average monthly National Advertising Fund contributions owed to the Franchisor during the previous twelve (12) months all multiplied by the number of months (or partial

months) remaining in the term of this Agreement.  Such payment shall be due to the Franchisor within fifteen (15) days after the Date of Termination.

124.    As of July 14, 2014, Scott owed $50,670.58 in future royalties related to the Lisle location.

125.    As of July 14, 2014, Scott owed PEFC $97,161.12 in future royalties related to the Oak Brook location.

126.    Thus, as of July 14, 2014, Scott owed to PEFC $148,831.70, in future royalties.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

A.    For judgment against Defendant Scott, as of July 14, 2014 in an amount in excess of $148,831.70 plus expenses, costs, attorneys' fees, and interest as provided in the Franchise Agreements; and

B.    For such other and further relief as this Court may deem equitable and just.

**COUNT IX**
**CLAIM VS PREMIER EQUITIES AND COREY SCOTT**
**ON THE NONCOMPETITION AGREEMENTS**

127.    PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 127 inclusive.

128.    The Franchise Agreements contains a non-competition clause that precludes Scott from engaging in a business with similar services or products as PEFC or Prospect Equities franchises:

The Franchisee and Franchisee's Principals jointly and severally covenant that, except as otherwise provided in writing by the Franchisor, or as otherwise provided by the laws of the Franchisee's state, the Franchisee shall not, during the term of this Agreement and for a continuous uninterrupted period commencing upon the expiration or termination of this Agreement, regardless of the cause for termination, and continuing for five (5) years thereafter, either directly or indirectly for itself, or through, on behalf of, or in conjunction with, any person, persons, or legal entity,

own, maintain, operate, engage in, be employed by, or have any interest in any business featuring the overall Prospect Equities® concept, with similar décor or similar services and products of a Prospect Equities® within a 25 mile radius of the business location designated hereunder, and within a 25 mile radius of any other Prospect Equities® Franchisee in existence or planned as of the time of termination or expiration of this Agreement, as identified in the Franchise Disclosure Document of PEFC in effect as of the date of expiration or termination of this Agreement.

129.    The restrictive covenants in the Franchise Agreements are reasonable and necessary to protect PEFC's legitimate business interests.

130.    As explained *supra*, Defendants have violated and continue to violate the post-termination restrictive covenants in the Franchise Agreements.

131.    PEFC has performed all of its obligations and conditions precedent under the Franchise Agreements.

132.    Defendants conduct at all times relevant herein has been willful and wanton, entitling PEFC to punitive damages.

133.    As a consequence of the foregoing, PEFC has suffered and will continue to suffer irreparable harm and damages, which are, at this time, incapable of actual determination.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

A.    For judgment against Defendants, jointly and severally for preliminary and permanent injunctive relief precluding them from engaging in any business featuring the overall Prospect Equities concept, with similar décor or similar services and products of a Prospect Equities within a 25 mile radius of the Lisle location, the Oak Brook location, and any other authorized Prospect Equities office or franchise in existence at the time of execution of the Franchise Agreements;

B.      For judgment against Defendants, jointly and severally, for all actual, direct, consequential, incidental, special and other damages, including without limitation and to the extent allowed by law, attorneys' fees, costs and expenses of suit, and punitive damages; and

C.      For such other and further relief as this Court may deem equitable and just.

## COUNT X
## CLAIM VS PREMIER EQUITIES AND
## COREY SCOTT – TRADEMARK INFRINGEMENT

134.    PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 134 inclusive.

135.    As of August 24, 2014, Defendants continue to use the Mark in commerce.

136.    Defendants' acts, practices and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Mark, and Defendants' sale, offering for sale, distribution or advertising of goods and services under the Mark, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(1).

137.    As a direct and proximate result of Defendants' infringement, PEFC has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

138.    PEFC has no adequate remedy at law because the Mark is unique and represents to the public PEFC's identity, reputation and goodwill, such that damages alone cannot fully compensate PEFC for Defendants' misconduct.

139.    Pursuant to Section XIX.F of the Franchise Agreements, Defendants have waived any defense that PEFC has an adequate remedy at law.

140.    Unless enjoined by the Court, Defendants will continue to use and infringe the Mark, to PEFC's irreparable injury.  The threat of future injury to PEFC's business identity,

24

goodwill and reputation requires injunctive relief to prevent Defendants' continued use of the Mark and to ameliorate and mitigate PEFC's injuries.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

A.    For judgment against Defendants, jointly and severally, for preliminary and permanent injunctive relief enjoining Defendants, their agents, servants and employees and those people in active concert or participation with them from:

1.    Using any trademark, service mark, logo or trade name that is confusingly similar to the Mark;

2.    Otherwise infringing the Mark or using any similar designation, alone or in combination with any other components;

3.    Passing off any of their products or services as those of PEFC's or PEFC's authorized franchisees;

4.    Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their businesses, products or services;

5.    Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with PEFC and its franchisees; and

6.    Unfairly competing with PEFC or its authorized franchisees, in any manner;

B.    For judgment against Defendants, jointly and severally, for all actual, direct, consequential, incidental, special and other damages, including without limitation and to the extent allowed by law, attorneys' fees, costs and expenses of suit, and punitive damages; and

C.    For such other and further relief as this Court may deem equitable and just.

**COUNT XI**
**CLAIM VS PREMIER EQUITIES, COREY SCOTT AND**
**PREMIER EQUITIES – LANHAM ACT – UNFAIR COMPETITION**

141.    PEFC realleges and reincorporates as if fully set forth herein the allegations of Paragraphs 1 through 141 inclusive.

142.    Defendants' acts, practices and conduct constitute unfair competition, false designation of origin and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

143.    As a direct and proximate result of Defendants' unfair competition, PEFC has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

144.    PEFC has no adequate remedy at law because the Mark is unique and represents to the public PEFC's identity, reputation and goodwill, such that damages alone cannot fully compensate PEFC for Defendants' misconduct.

145.    Pursuant to Section XIX.F of the Franchise Agreements, Defendants have waived any defense that PEFC has an adequate remedy at law.

146.    Unless enjoined by the Court, Defendants will continue to use and infringe the Mark, to PEFC's irreparable injury.  The treat of future injury to PEFC's business identity, goodwill and reputation requires injunctive relief to prevent Defendants continued use of the Mark and to ameliorate and mitigate PEFC's injuries.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

26

A.      For judgment against Defendants, jointly and severally for preliminary and permanent injunctive relief enjoining Defendants, their agents, servants and employees and those people in active concert or participation with them from:

1.      Using any trademark, service mark, logo or trade name that is confusingly similar to the Mark;

2.      Otherwise infringing the Mark or using any similar designation, alone or in combination with any other components;

3.      Passing off any of their products or services as those of PEFC's or PEFC's authorized franchisees;

4.      Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their businesses, products or services;

5.      Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with PEFC and/or its franchisees; and

6.      Unfairly competing with PEFC or its franchisees, in any manner;

B.      For an order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, receptacles, logo items, and advertisements, bearing the Mark, in possession of the Defendants, their agents, servants and employees, and those people in active concert or participation with them be delivered to PEFC at Defendants' cost;

C.      For judgment against Defendants, jointly and severally, for all actual, direct, consequential, incidental, special and other damages, including without limitation and to the extent allowed by law, attorneys' fees, costs and expenses of suit, and that, because of the willful nature of said infringement, the Court enter judgment for PEFC for three times the amount of said damages, pursuant to 15 U.S.C. § 1117; and

D.      For such other and further relief as this Court may deem equitable and just

**COUNT XII**
**CLAIM VS PREMIER EQUITIES, COREY SCOTT AND PREMIER EQUITIES –**
**VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**

147.    PEFC realleges and reincorporate as if fully set forth herein the allegations of Paragraphs 1 through 147 inclusive.

148.    Defendants' infringement of the Mark constitutes, *inter alia*, use of a false designation of origin or a false or misleading representation, which wrongfully and falsely designates, describes and represents Defendants' real estate brokerage as being sponsored by, approved by, or connected with PEFC, and is likely to cause confusion as to Defendants' affiliation, connection or association with PEFC or its authorized franchisees.

149.    Defendants' acts constitute deceptive trade practices in violation of 815 ILCS 510/2.

150.    As a direct and proximate result of Defendants' deceptive trade practices, PEFC has been and are likely to be substantially injured in its business, including their goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

151.    PEFC will be irreparably injured if Defendants are permitted to operate a real estate brokerage using the Mark and PEFC has no adequate remedy at law because the Mark is unique and represents to the public the PEFC's identity, reputation, and goodwill, such that damages alone cannot fully compensate PEFC for Defendants' misconduct.

152.    Pursuant to Section XIX.F of the Franchise Agreements, Defendants have waived any defense that PEFC has an adequate remedy at law.

153.    Unless enjoined by the Court, Defendants will continue to use and infringe the Mark, to PEFC's irreparable injury.  The threat of future injury to PEFC's business identity,

goodwill and reputation requires injunctive relief to prevent Defendants' continued use of the Mark and to ameliorate and mitigate PEFC's injuries.

**WHEREFORE**, PROSPECT EQUITIES FRANCHISE CORPORATION prays for judgment as follows:

A.      For judgment against Defendants jointly and severally for preliminary and permanent injunctive relief enjoining Defendants, their agents, servants and employees and those people in active concert or participation with them from:

1.      Using any trademark, service mark, logo or trade name that is confusingly similar to the Mark;

2.      Otherwise infringing the Mark or using any similar designation, alone or in combination with any other components;

3.      Passing off any of their products or services as those of PEFC's or PEFC's authorized franchisees;

4.      Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their businesses, products or services;

5.      Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with PEFC or its authorized franchisees; and

6.      Unfairly competing with PEFC or their franchisees, in any manner;

B.      For judgment against Defendants, jointly and severally, for all actual, direct, consequential, incidental, special and other damages, including without limitation and to the extent allowed by law, attorneys' fees, costs and expenses of suit, and punitive damages; and

C.      For such other and further relief as this Court may deem equitable and just

29

Dated: August 26, 2014

**PROSPECT EQUITIES FRANCHISE
CORPORATION**

By:   /s/ Rein F. Krammer
          One of Its Attorneys

Rein F. Krammer, Esq.
James G. Gillingham, Esq.
Masuda, Funai, Eifert & Mitchell, Ltd.
203 North LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
Tel:    (312) 245-7500
Fax:    (312) 245-7467

n:\sys34\14639 - prospect equities\litigation\pleadings\final complaint\prospect equities complaint dg rev.docx